Your honors, the fifth call of the day, 217-0091, people of the state of Illinois v. Jamie, Christopher Chevelle Key, on behalf of Mr. Key, Carolyn R. Clarkless, on behalf of the people, Mr. Adam Craig. Ms. Clarkless, you may proceed. Thank you, your honors. As mentioned, my name is Carolyn Clarkless, and I am here on behalf of Jamie Key, the appellant. This court should reverse Jamie Key's convictions and remand for a new trial because the state's strategic decision to not perfect its impeachment of Key, whose credibility went to the heart of the case, denied him a fair trial and due process. Specifically, at trial, Key testified that Key shot the victim in self-defense. Key gave testimony about the events leading up to the actual shooting of the victim and then was subject to cross-examination by the state. On cross-examination, the state asked a series of prejudicial, leading questions, prefaced by the words, didn't you tell the police – excuse me, you never told the police that this was self-defense. You never told the police that the victim threw anything at you, etc. And in doing that, they're creating the impression that Mr. Key has changed his story since he initially spoke with the police after the incident occurred. Now, if the state plans to impeach the defendant, which they're certainly entitled to do, they can lay a foundation for it the way this was done here, but then they are obligated to ensure that the defendant receives a fair trial to perfect that impeachment. And in this case, it was never perfected. And as a consequence of that, the jury was left with the cross-examination of Mr. Key, where the prosecutor, who's representing the people, is basically letting the jury know that he gave a statement to the police, and then it differed in a material way from his testimony at trial. Did counsel ask that the jury be admonished to disregard? There was a series of back-and-forth exchanges between the trial judge about whether he could give a curative instruction, which would be that the jury should disregard any portion of these questions. But the judge backed off on that. There was never – he ultimately decided that he would allow the state to reopen their case instead for the limited purpose of perfecting the impeachment. And part of his concern was that he saw People v. Vinson, which is the case where the judge did give a curative instruction, and the appellate court found that that proved more damaging than just letting the question sit out there with any instruction because it caused attention to the question. So the judge ultimately thought that the best way to cure this, which he did tell the prosecutor of the case, and what she had done here verged on unethical, and it was absolutely improper. So to sort of cure the potential problem of Mr. Key being denied a fair trial, he allowed the state to reopen their case for the limited purpose of rebutting or perfecting the impeachment. So what did the state do? They called a detective, and yet he was unable to perfect the impeachment. So it remained unperfected, if you will. Didn't the state attempt to perfect the impeachment by playing the videotape? They brought that up, Your Honor, but the problem with the videotape – and ultimately, this came into – there was disagreement about this issue post-trial. The judge ultimately ruled, and the judge says this to the state when they're arguing this during post-trial motions, that I'm the one who ruled that videotape was not coming in. You who are allowed, you being the state, could perfect the impeachment, which was limited to the series of questions. There's about 11 to 12 questions. And so he ultimately – the judge decided that the videotape would not come in, and part of the problem with that – not the problem with it not coming in, but you would have to create – what the questions presented was you never told the police this, that, and the other. So on the videotape, if you never told the police those things, playing the videotape doesn't cure the impeachment or perfect the impeachment, if you will. So the videotape, to some extent, is a red herring. Let me ask you this. Do you agree that portions of the videotape would have perfected the impeachment? It's possible that some portions would. But post-trial motion, when the judge ultimately rules and denies the motion, he does go through the question set issue and talks about which ones could have been perfected. So what the state could have done is shown those limited portions or at least asked the judge at the time to do that. But really what should have happened here – The defense counsel objected to playing any portions of it. Not initially. He said that they had to play it with surgical precision. He correctly stated that the entire hour-and-20-minute tape could not come into evidence because there were some issues brought up in the tape that weren't relevant to the issue and because the reopening of the state case was only limited to impeaching key on that series of questions that the judge had said needed to be perfected. So playing an hour-and-20 minutes would not cure the impeachment, especially where you're trying to prove a negative inference. If he never told the police something, which is what the state is saying during his cross-examination, it's not going to be on the tape. So to that degree, I think the state's argument about the defense prohibiting them from playing the videotape, it really is a red herring. Because what could have happened and what should have happened to ensure that Mr. Key received a fair trial is that the state should have prepped their witness. All they had to do is have their witness look at the videotape prior to his rebuttal testimony, and then they could have asked him the questions – the series of questions that are laid out here. Did Mr. Key tell you that he acted in self-defense? Did Mr. Key tell you that she grabbed a handful of knives, etc.? That's how you would have perfected the impeachment. And they purposely did not do that. They did not prep their witnesses. They told the court that they made a strategic decision not to perfect the impeachment. That's not proper. That's denying Mr. Key a fair trial. That's a trial. Which is worse, perfecting the impeachment or not perfecting the impeachment? I think what's worse is, because our courts have held that the failure to not perfect the impeachment results in a trial based not on facts that are introduced into evidence, but it results in a trial based on innuendo and insinuation, that it's worse to not perfect the impeachment. Because say the detective had been called and testified and perfected the impeachment. Well, then he would have been subject to cross-examination by the defense. So, given that it's the defendant's right to a fair trial here, and that requires that if they're laying the foundation to impeach him, then it had to be perfected. The fact that he was subject to cross-examination is about the same thing as saying he had red hair. It doesn't prove anything unless, of course, the cross-examination impeaches him. For the detective? Yes. If he says, I was present and I reviewed the tape, and I couldn't see on the tape, and I don't remember him ever saying what he claims he may have said. So, then the impeachment is not perfected. So, then these leading questions are improper. No, that is perfecting the impeachment to the extent that the police officer is agreeing with the state that he never claimed that it was self-defense, for instance. Well, I… If he was asked, you never said, you know, you never told the cops that it was self-defense, did you? Oh, I may have. I don't remember. Well, then if he called the cops and the cop says, I looked at the tape and I also don't remember him saying he ever told me it was self-defense, that's perfecting the impeachment. Sure. So, which is worse, having it perfected or not perfected? Well, I think if it was perfected, at least the defense counsel would have had a chance to cross-examine the detective. But cross-examining him is going to do what? Unless you are going to show the jury the same videotape where he is, in fact, saying the fact that he supposedly told them or is in the act of telling them that it was self-defense, I don't know how you're going to impeach him. Well, I think the cross-examination could flesh out whether or not, because if you look back at the post-trial hearing, the judge is saying that, you know, some of these questions are somewhat debatable in the sense, did she come at him with two knives or was it a handful of knives? So, to some degree, the impeachment is, there's some subjective quality to it. And that also goes to, you know, you never told them that this was self-defense. Well, self-defense is a legal term that we use in the courts. What Mr. Key was explaining, from what I can gather from what the judge said, is that this was an accident. So, to the extent that the, did Mr. Key use the word self-defense? I don't think there's a dispute that's not the word he used, but it is subjective to some degree about what happened here. And I think the other thing that we have to keep in mind is he received a second-degree murder instruction. In this case, that boiled down to his credibility. There was no other evidence contrary to what the state's only witness said, which was Mr. Benjamin, that could counter the state's theory in the case that this was a first-degree murder. He chose to testify, so his, he being Mr. Key, so it's his credibility. And the judge says that. The judge recognizes that when defense counsel initially moved for the missed trial. He said that his credibility went to the heart of the defense. And his credibility, being Key's credibility, was the only basis for which he could receive the second-degree murder instruction, which went to his unreasonable belief in justification for self, I'm sorry, for the use of deadly force. And also, whether the jury found him credible, and whether there was a serious provocation that resulted in him engaging in the shooting of the victim in this case. So where the credibility of the state's witness, which is Benjamin, who's the only other eyewitness, is put on the scale with Key's credibility, which is then subjected to innuendo by the state by asking this series of questions, which insinuates to the jury that he gave a different story and now he's lying to them. And the fact that this is so important is, I think, quite well telegraphed by the trial court, who just saw him testify a couple days prior to this. And at this point, the trial court is saying his credibility is the heart of the defense. That goes to the only evidence he has to be found guilty of second-degree murder, or in the alternative, acquitted entirely because the jury believes it was self-defense. Counsel, do you agree that the defendant's testimony was completely undermined by Benjamin's testimony? I think there was a conflict in their version of offense. I don't think it's completely undermined. There's two witnesses to the offense. One said one thing and the other said something else. So it really was up to the jury to decide that as the trier of fact. What happened here, by not perfecting the impeachment, what the state has done is corrupted that process of the fact finder. It's not allowed the jury to consider all the facts and evidence. Instead, what's happened is it's laid something out there to the jury that the prosecutor knows something, but the jury doesn't. And what's that? Well, that Mr. Key gave a different story when he first was interviewed by the police shortly after this offense took place. So given that the jury is the trier of fact and that they are presented with second-degree murder instruction, they're weighing his credibility versus that of Mr. Benjamin. And to the extent that these leading questions, which were prejudicial, they were substantial, there were a series of them, it wasn't an isolated incident, you know, we don't know the effect that it had on the jury with regard to judging his credibility. And the courts have repeatedly said that we have to err on finding that the defendant received a fair trial. That didn't happen in this case. This was a jury trial. Key's credibility was a material issue. This wasn't collateral to some ancillary issue. It went to whether or not he would believe or the jury would believe that this was self-defense and acquit him or believe it's second-degree murder. We know they convicted him of first-degree murder, so they found him incredible. And to the extent that the state's improper conduct played into that has denied him a fair trial. Didn't counsel argue, didn't defense counsel argue that the unperfected impeachment was used by defense counsel to say, see, he's telling the truth because they never were able to impeach him? Well, I think that's all counsel could do because if you consider what counsel said, he's got to somehow mitigate the damage of the prosecutor saying this to the defendant, saying this by what I mean is asking a series of questions. The prosecutor is indicating to the jury that she knows something else, which is that he gave a different story. They haven't received any evidence. So a closing argument, which is not evidence, the jury's instructed that defense counsel's argument is not evidence, that, you know, what's defense counsel supposed to do? And I would also note, you know, the judge did ask him about this post-trial. Did this affect your ability to give a closing argument? And he did say yes. He's an officer of the court. He said that the fact that this motion for mistrial was still pending and this was still hanging out there, it did cause him to make substantive changes to his argument. So, yes, he absolutely argued that. I think he would have been remiss not to because otherwise it's sitting out there like an elephant in a room. And it should have never been there in the first place. The state had ample opportunity to correct this error. And I would note, too, that in their closing argument, did they mention this? Nope. I wonder why. There's case law that suggests that if the attempted impeachment is done in good faith but fails, that's not the same thing as, you say, using innuendo and making statements through rhetorical questions or other questions knowing that there is not going to be a perfected impeachment, that that is improper. That is dirty tactics. Sure. And so there was evidence, I thought, in this case that indicated that there was some basis for the prosecutor to believe that had the police officer been more attuned to the circumstances, might have answered the questions in a way that it would have perfected the impeachment. Well, that's one way of looking at it. However, it was the state's burden. She laid the foundation. She made a strategic decision. She said this on the record. Me and my supervisor made a strategic decision not to impeach him. And she said to the trial court, how does that do anything but benefit the defendant? And as the trial court said, well, it makes him look like a liar. That's the whole reason we have this rule. This is exactly why we do not allow the state to lay a foundation to impeach someone and then not follow through on that. That's reversible error, especially in a situation like this. And if the impeachment had been perfected and he had been shown to be a liar, do you think his chances of not being convicted were enhanced? I think that we have to look at it by what did happen and whether or not under our law this denied him a fair trial. It would have given the jury something else to consider, but we don't know because it wasn't perfected. I mean, I'm not trying to evade your question, but what happened here was a strategic decision by the state's attorney. So for them not to perfect this and then for the defendant to be perceived to somehow benefit him, the state certainly doesn't want to do something that's going to benefit the defendant. Your time is up. Thank you. Thank you. You've been given an opportunity to make rebuttals. Mr. Trejo. May it please the Court, Counsel, Adam Trejo on behalf of the people of the state of Illinois, at the outset the state notes that the state should have attempted to perfect impeachment prior to the post of the evidence. They should have called up Detective Beetz. Nevertheless, the analysis really is whether the trial court abused its discretion in denying the defendant's motion for a mistrial. That's the view, that's the center of review that we're reviewing this issue. And here, the trial court properly relied on the AMOS factors, which I mentioned in the state's brief. The case AMOS stands for if there is an incomplete impeachment of a witness and it rises to the level of reversible error, that the unfounded insinuation that the defendant is not credible, it is reversible error if it's substantial, if it's repeated, and if it's definitely prejudicial. So those are the three factors that the trial court analyzed when it denied the defendant's motion for a mistrial. And the trial court held that it was not the error that this defendant is not credible, it wasn't substantial, and it wasn't repeated. The trial court noted the state never argued during closing arguments that he's not credible. He lied. He didn't tell the detective this. The state backed off on it. It wasn't repeated. And as it was brought up during a defendant's argument, that it was the defendant who really placed emphasis. Now, the defendants stated that they had to mitigate the damage, but that's not what happened here. This wasn't a case of mitigating damage. They really went above and beyond mitigation. Defense counsel said that was the most powerful evidence in this case because it was the identical story. The best evidence because he went unimpeached. That's beyond mitigation. That's, I would say, using that strategically to your advantage. Turned a shield into a sword? Correct. What else was defense counsel supposed to do? Defense counsel was supposed to really emphasize the other evidence. My client testified to this. These are his versions. And although they're conflicting versions between the state and the defendant, this is why you should believe this version. So you think defense counsel should have just left it alone and just hope the jury ignored it, too, since nobody mentions it in closing? No, defense counsel had in his rights discretion to mitigate it. Right. He can. It's a proper tactic. But it's his job. Right. Correct. But he emphasized it to the extreme, crossing a line from mitigating damage to the most powerful evidence, the identical story, when unimpeached. This is strong language. And, of course, the trial court considered this when he denied defendant's motion for mistrial. And the trial court also really went on to its prejudicial impact. He stated that, no, defendant wasn't extremely prejudiced. He considered all the evidence without this alleged error. He quickly noted that the physical evidence completely contradicted defendant's version of events. Defendant stated, Benjamin stated, the stepfather, I saw the victim with the stab wound in her chest. And the forensic examiner testified she did have the stab wound in her chest. Defendant's version completely fails to mention this. He completely fails to explain how this victim was stabbed. That's an obvious error in defendant's testimony that really goes to his credibility. And I think it's a bigger impact on his own credibility than this alleged error. There's also, of course, Benjamin's testimony that he saw or he heard a gunshot from behind him where defendant was standing and shot the victim as he was trying to check if she was okay. Defendant's version of events, he states that he first saw Benjamin when they were first interacting. And, of course, defendant fails to state that he saw Benjamin downstairs. Again, two different versions. And, of course, we have his friend, his friend's testimony. Defendant fled after the murder to this apartment, and he testified that he was picked up by this friend. This friend testified that he says, no, he came to my apartment. All the evidence seems to contradict defendant's credibility, all of it, not just this alleged failure to perfect impeachment. So when you consider if the alleged error was substantial, repeated, indefinitely prejudicial, I don't think you can't say that the trial court abused discretion in denying defendant's motion for a mistrial when he, rightfully so, went through three of the animal's factors and found a logical explanation as to why that motion should be denied. And just on the flip side of that, I did cite an Illinois Supreme Court case when it states that the fair – defendant on appeal is arguing that his trial, he did not receive a fair trial. But yet the Illinois Supreme Court said that the fairness of a trial court proceeding is not undermined by the failure of a prosecutor to perfect the impeachment of a witness where the prosecutor attempts to do so. And here that prosecutor did attempt to do so. Now, the timeline was within a week. There was testimony during arguments that the ASA testified that she called beats on a Friday, May 15, 2015. They realized then that he had not viewed the video, but that it wouldn't be a problem because they assumed that they could introduce that portion. Defendant filed his objection on May 22, and it was not ruled upon until May 26. So within that four days, the state thought that it could. And when that objection was granted, that's when they called Detective Beets. Now, unfortunately, Detective Beets was – spoke with the prosecutor five to ten minutes before he testified. But again, during that motion for a new trial, he said he couldn't recall the crux of that conversation. But here the state did acknowledge that it should have perfected the impeachment, and it really tried. And they were precluded by defendant's objection when he said that video is not admissible. That is what they said, the video is not admissible. And the trial court granted defendant's objection and told the state, you can't admit this video. So the state did the next best thing and called Detective Beets on the stand. So here they did attempt to do so, and there was a good faith effort to try to perfect the impeachment. And even – and that failure did not amount to reversible error because, as I stated, the trial court did an abuse of its discretion because it properly considered the adverse factors. How was this good faith? Well, here the prosecutor testified that she was under the wrongful impression that they couldn't – that they shouldn't perfect the impeachment because it was a collateral matter. Now we know that that is incorrect. And when the defendant rightfully brought this up, the defendant then realized the error of her ways and tried to reconcile that error. The trial court allowed the state to reopen its case to present rebuttal testimony, and that's when she tried to reconcile that mistake. I mean, that's the first thing that I admitted the state should have. The question is where's the good faith. She asked the questions in the first place so we can extrapolate. She'd never talked to Detective Beets because if she had, she would know that he didn't remember anything. Well, she did. So where's the good faith? The good faith is to try to bring the video. That is the good faith. The good faith has to either rise or fall at the time the questions are asked. I would say a misapprehension of the law may have been mistaken. She may have been mistaken. She said that she thought it was a collateral matter. Does a misbelief of what the law is equate with absence of good faith? I don't believe so. I believe she was mistaken, and she should have. I can see that. I acknowledge that. It was a mistake. But I don't believe there was a bad faith intent behind it. I believe that she was just mistaken of the law. So what is she? I'm sorry. So the follow-up then is, all right, statement of mistake. All right, there's a questionable good faith here. But it's the defendant who then doesn't get a fair trial. Right, and that's when you go into the analyst factors when this issue was brought up before the trial court. And that's when you look at the three factors that I identified during this argument. Absolutely. How can it be considered a mistake when she admitted that it was a tactical decision that had been made? Yeah, it was. I reviewed the transcript. She tried to explain that it was a strategic decision, and it was like a couple, one or two sentences. Yes, she said that it was a strategic mistake because she was under the mistaken belief that you don't impeach on collateral matters. That was the rationale that she gave. Again, we acknowledge that it was a mistaken belief. Absent any further questions, the people's civil and law enforcement request that this Honorable Court uphold the defendant's convictions. Thank you. Thank you. Ms. Clarkquist, you may proceed. Your Honors, the question, you never told them that this was, quote, self-defense, did you? That's not a collateral matter. That goes to the heart of his defense, whether this was a self-defense claim. The other thing, the State is trying to minimize their strategic choice here. You know, the courts have repeatedly said this is impermissible, impermissible. The judge himself said this verged on unethical. She admitted it was a strategic decision. In addition to that, you know, it's the defendant who deserves the right to a fair trial. He can't be held hostage by the State making so-called mistakes. Additionally, with regard to the aimless factors, this was substantial. It was a series of questions that went exactly to his defense. And it was always prefaced, you never told them. So what are we telegraphing to the jury? He's a liar. Jury, he's telling you something different, and I know this. Furthermore, it was repeated. The fact that the State didn't bring this up in closing argument is very telling. They were on the verge of this being declared a mistrial. So the fact that they didn't bring this up in closing argument, I think, tells us a lot. That they knew this was an error, and it was on the verge of causing this case to be declared a mistrial. And finally, this was prejudicial. The jury is the trier of fact. They got to hear all this other evidence that was properly admitted. But what else did they hear? They heard facts not in evidence, which was the prosecutor's prejudicial leading questions to the defendant. And as a consequence of that, it corrupted his right to a fair trial. So it asked his court to follow the precedent that's already been set by numerous courts, including the Illinois Supreme Court in Williams. This goes back along Wayne Nuccio. The cases cited in Arbreece were, you know, the State can't profit from this. Essentially, that would be what is the Latin. They were going to get a free pass because they say, well, I tried to perfect impeachment but wasn't able to. Well, you shouldn't ask these questions. If you're laying the foundation for impeachment, you shouldn't ask these questions unless you can perfect it. And the reason why we have that is because that's the rule of law. That ensures that the defendant gets a fair trial that's free of innuendo and free of insinuation. He gets a fair trial based on the facts that are properly admitted into evidence. So for those reasons and the reasons stated in the brief, I would ask that you reverse this conviction and remand for a new trial. Thank you. Thank you. The case will be taken under advisement. There are no more cases on the call this afternoon. Court is adjourned.